UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Wilson W. Hendricks, III,

        Plaintiff,

vs.                                        Case No.  3:06-cv-224-J-33MMH

Smartvideo Technologies, Inc., a
Delaware corporation,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Smartvideo's Motion for Summary Judgment (Doc. #44), filed on November 1, 2006; Hendricks' Cross-motion for Summary Judgment (Doc. #53), filed on November 17, 2006; Smartvideo's Motion for Sanctions (Doc. #58), filed on November 29, 2006; and Hendricks' Cross Motion for Sanctions (Doc. #67), filed on December 18, 2006.  Responses were filed as to each motion, Doc. ##52, 60, 65, 68, respectively.  For the reasons stated below, the Court denies both motions for sanctions, denies in part and grants in part Smartvideo's motion for summary judgment, and denies Hendricks' cross-motion for summary judgment.

**I. Facts**

Smartvideo, a Georgia-based corporation, is in the business of cellular-based video distribution.  (Doc. #44 at 3.)  Smartvideo was founded by Richard Bennet and Robert Walters in January 2000. (<u>Id.</u>)  Smartvideo employed Hendricks as Smartvideo's Vice President

of Operations between April 1, 2005, and October 28, 2005. (<u>Id.</u> at 2.)

Though Hendricks did not begin working for Smartvideo until 2005, the relationship between Smartvideo and Hendricks began much earlier. The relationship began when Rick Turbin, an outside representative of Smartvideo, introduced Hendricks to Roger Dunavant, Smartvideo's Director of New Business Development. (<u>Id.</u> at 4.) At the time, Hendricks worked for a company called BearingPoint. (<u>Id.</u>) Smartvideo believed that BearingPoint wanted to jointly develop products to sell to BearingPoint's clients. (<u>Id.</u>) In furtherance of this venture, Hendricks visited Smartvideo. (<u>Id.</u>) Smartvideo contends that during this visit Hendricks provided Smartvideo a resume, printed on BearingPoint letterhead, indicating that Hendricks held a Bachelor's degree from the University of Florida. (<u>Id.</u>) Smartvideo also contends that Hendricks orally represented that he graduated from the University of Florida. (<u>Id.</u>) BearingPoint and Smartvideo did not ultimately enter into a business partnership. (Doc. #44 at 4.)

Subsequently, Smartvideo decided to hire a Vice President of Operations. Smartvideo represents that, to fill this position, Smartvideo desired an individual with a minimum of fifteen years experience in the telecommunications industry, a bachelor's degree or higher, and professional contacts within the telecommunications industry. (<u>Id.</u> at 5.) Dunavant informed Turbin of the opening.

(Id.)   In turn, Turbin informed Hendricks.   (Id.)   Hendricks contacted Dunavant regarding the position.  (Id.)

Dunavant recommended to Bennet that Smartvideo hire Hendricks. (Doc. #44 at 7.)  In February 2005, Bennet interviewed Hendricks. (Id.)  Subsequent to the interview, Bennet offered Hendricks the Vice President of Operations position.  (Id. at 8.)  On March 8, 2005, Bennet emailed Hendricks an employment proposal and an employment agreement.  The employment proposal provided, in part:

> As an inducement to join [Smartvideo], [Smartvideo] will grant you 1,000,000 non-qualified Incentive Stock Options of Smartvideo Technologies, Inc. Common Stock in accordance with its plan.  The options shall vest over a two year period, with 500,000 vesting upon your reporting for duty, 250,000 vesting on your first anniversary, and 250,000 vesting on you [sic] second anniversary.  The options will have a strike price of $2.25 and may be exercised on a cashless basis.

(Id.)(citing Doc. #43-2 at 18-19, Ex. 4-6).  The employment proposal also included provisions providing that the employment was at-will and that Hendricks could indicate that the conditions were acceptable by signing and dating the proposal.

On April 1, 2005, Hendricks assumed the position of Vice President of Operations for Smartvideo.  (Id. at 9.)  In the course of Hendricks' employment, Smartvideo became engaged in a proxy fight with Forte Capital, an investment group with members owning Smartvideo stock.  (Id. at 11.)  Smartvideo suspected Hendricks and another Smartvideo employee, Gene Carter, of leaking information to Forte.   (Id.)   Based on this suspicion, Smartvideo terminated

Hendricks, by letter dated October 28, 2005. (Id. at 13.) Smartvideo also terminated Carter. (Id.)

Hendricks' complaint alleges multiple counts, including (1) Promissory Estoppel; (2) Fraudulent Inducement; (3) Specific Performance;[1] (4) Breach of Oral Contract. (Doc. #2.) Smartvideo filed a counterclaim, claiming fraudulent inducement. (Doc. #50.) Smartvideo requests Summary Judgment as to each count of Hendricks' complaint and Smartvideo's counterclaim. Hendricks requests summary judgment on Smartvideo's counterclaim.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

---

[1] Smartvideo provides no argument as to the specific performance count. Smartvideo, as the moving party, bears the burden to prove that summary judgment is appropriate. Because Smartvideo makes no argument on the specific performance claim, Smartvideo has failed to carry its burden. Accordingly, as to the specific performance claim, Smartvideo's motion for summary judgment is denied.

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if

that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. Analysis

### A. Choice of Law

Smartvideo contends that, as to each count, Georgia law governs. In its response, "[Hendricks] concedes that it is a close question as to whether Georgia or Florida law applies." (Doc. #52 at 2.) For the reasons stated below, the Court finds that Georgia law governs each claim.

This is a diversity action. In diversity cases, the Court applies the substantive law of the forum, Florida, including Florida's choice of law rules. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).

In Acme Circus Operating Co. v. Kuperstock, 711 F.2d 1538(11th Cir. 1983), the Eleventh Circuit provided the following three step approach to a choice of law analysis:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state of [Florida] applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

Id. at 1540.

As noted, Hendricks has filed a four-count complaint and Smartvideo has filed a counterclaim. Among the four counts and counterclaim, there are both contract and tort claims. Thus, the nature of the problem is both tort and contract.

With the nature of the problem established, the Court next determines the choice of law rule that Florida applies. In the contract context, for purposes of determining whether a valid contract was formed, Florida adheres to the lex loci contractus doctrine. Trumpet Vine Invs., N.V. v. Union Capital Partners I, 92 F.3d 1110, 1119 (11th Cir. 1996). As to torts, "Florida applies the significant relationship test of the Restatement (Second) of Conflicts of Laws." Nelson v. Freightliner, LLC, 154 Fed. Appx. 98 (11th Cir. 2005)(citing Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980)). The Court will apply these approaches to the facts.

Pursuant to the lex loci contractus doctrine, "the law applied to questions regarding validity and substantive obligations of a contract is the law of the state in which the contract is 'made.'"

Motmanco, Inc. v. McDonald's Corp., Case no. 3:04-cv-270-J-99HTS, 2005 U.S. Dist. LEXIS 33965, at *10-11 (M.D. Fla. March 30, 2005)(citing Ray-Hof Agencies, Inc. v. Petersen, 123 So. 2d 251, 253 (Fla. 1960); Jemco. Inc. v. United Parcel Serv., Inc., 400 So.2d 499, 500 (Fla. 3d DCA 1981)).   A contract is made at the location of the last act necessary to create a contract. Trumpet Vine Invs., N.V., 92 F.3d at 119.   "As specifically related to oral contracts, they are considered 'made' in the state in which the oral agreement was reached."   Motmanco, 2005 U.S. Dist. LEXIS 33965, at *11(citing ThunderWave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1564 (S.D. Fla. 1997); Mallinckrodt. Inc. v. Whittaker M.A. Bioproducts, Inc., 81 Md. App. 96, 566 A.2d 1113 (Md. Ct. App. 1989)).   Hendricks contends that he and Bennet reached an oral agreement at Smartvideo's offices in Georgia.   (Doc. #43-2 at 18.) As such the agreement was reached, and thus made, in Georgia. Accordingly, Georgia law governs the contract claim.

Moreover, Hendricks bases his promissory estoppel and specific performance claims on the same factual basis as the contract claim. As such, the promissory estoppel and specific performance claims are governed by Georgia law.   See Motmanco, 2005 U.S. Dist. LEXIS 33965, *8-20 (applying the law governing the contract claim to the promissory estoppel claim).

As noted, in the tort context, Florida follows the most significant relationship test of the Restatement (Second) of Conflicts of Law.  The Restatement (Second) provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts of Law § 145.  The Court examines Hendricks' and Smartvideo's fraudulent inducement claims against this analytical backdrop.  Doing so, it is clear that Georgia has the most significant relationship to the claims.  The Court notes that Smartvideo is based in Georgia, a majority of the negotiation related to Hendricks employment took place in Georgia, and Hendricks worked out of Smartvideo's Georgia office.  The only factor weighing in favor of Florida law is that Hendricks resides in Florida.  However, when balanced against the factors supporting Georgia law, the scales tip in favor of application of Georgia law.

Thus, the Court will apply Georgia law to the fraudulent inducement claims.  Accordingly, Georgia law governs each claim in this case.

**B. Smartvideo's Motion for Summary Judgment**

**1.  Breach of Oral Argument**

Smartvideo argues that Hendricks' oral contact claim is unsustainable.  Smartvideo makes several arguments. Smartvideo contends that the employment agreement required Hendricks to sign the agreement.  Smartvideo claims that Hendricks did not sign the agreement.  As such, Smartvideo argues that no contract was created.  Notwithstanding this contention, Smartvideo also argues that, since Hendricks was an at-will employee, Hendricks cannot sue to enforce future performance.

The Court first addresses the signature argument.  In his complaint, Hendricks claimed a breach of oral contract. Subsequently, Hendricks claimed that Smartvideo and Hendricks memorialized this agreement in a written contract.  Hendricks claims he signed the contract.  Hendricks moved to amend his complaint to allege a breach of the written agreement.  The Magistrate Judge denied that request.  Accordingly, the Court solely addresses the oral contract claim.

As noted, Hendricks claims that he and Smartvideo reached an oral agreement regarding the terms of his employment.  In its motion, Smartvideo claims that no contract existed, as the written

agreement required a signature and Hendricks did not sign the agreement.  However, the evidence is not undisputed that an earlier agreement, stemming from discussions between Bennet and Hendricks, would become effective only if reduced to writing and signed by the parties.  While Smartvideo may argue this point, such argument creates a factual issue properly reserved for the jury.  Pacrim Assocs. v. Turner Home Entm't, 510 S.E.2d 52 (Ga. Ct. App. 1998)(quoting Gen. Hosp. of Humana v. Jenkins, 374 S.E.2d 739, 827 (Ga. Ct. App. 1988))("a jury would be authorized to find 'that a binding . . . agreement was in effect, and the failure to sign [a] written instrument did not affect the validity of the oral agreement.'")

Moreover, though not factually on point with this case, the law cited in Federal Paper Bd. Co. v. Harbert-Yeargin, Inc., provides further guidance on this matter:

> In Georgia, a contract does not exist "unless the parties agree to all of its material terms and conditions and nothing is left to future agreement." As such, agreements to agree or preliminary statements of intent to contract in the future are unenforceable.

> A preliminary agreement, however, may become enforceable due to the subsequent actions of the parties. Moreover, part performance of the terms of a contract can be evidence of the acceptance of the terms of the contract. The finding of the existence of a contract thus turns on whether the evidence demonstrates the parties' assent to all of the material terms of the alleged contract at the point in time at which enforcement of the contract is sought.  If such assent is demonstrated, courts have been willing to enforce unexecuted agreements, and oral

> agreements, where the parties contemplated that a more
> formal written contract would be completed in the future.

92 F. Supp. 2d 1342, 1349 (N.D. Ga. 1998)(citations omitted). Here, Hendricks reported for work and remained employed for several months. As such, there was part performance of the alleged agreement. Smartvideo also partially performed, paying Hendricks a salary pursuant to the alleged agreement. Such part performance can be taken as evidence of acceptance. For the foregoing reasons, Smartvideo's signature argument fails.

As noted, Smartvideo also argues that Hendricks was an at-will employee. Consequently, Smartvideo argues that Hendricks is precluded from seeking salary or stock that he would have earned in the future. Hendricks does not contest that he was an at-will employee. Further, Hendricks does not contest that, as an at-will employee, he is not entitled to "stock options which had not vested at the time of his termination of employment or for lost salary or other benefits resulting from his termination." (Doc. #52 at 6.) However, Hendricks contends that he is entitled to the benefits that he earned prior to his termination. Georgia law supports this proposition.

"'Georgia law provides that an at-will employee such as [Plaintiff] can recover damages which have accrued under [a] contract.'" Tart v. IMV Energy Sys. of Am., 374 F. Supp. 2d 1172, 1181 (N.D. Ga. 2005)(quoting Livernois v. Medical Disposables, 837

F.2d 1018, 1023 (11th Cir. 1988))(brackets in original); see also Colosi v. Electri-Flex Co., 965 F.2d 500, 504 (7th Cir. 1992)(citing McKnight v. General Motors Corp., 908 F.2d 104, 109 (7th Cir. 1990)("Employment at will is a contractual relationship, one which entitles the employee to all wages and other benefits that he has earned, i.e., that accrued before he was terminated.")  In Tart, the court provided:

> It is true that an employee cannot sue to enforce future performance of a terminable-at-will employment agreement. However, an employee may sue on an oral contract for employment terminable at will for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge, and not for damages or for compensation for services not performed or for any breach of contract.

Id.  (quoting E.D. Lacey Mills, Inc v. Keith, 35 S.E.2d 148, 152 (Ga. Ct. App. 1987)).  The same reasoning applies to the instant case.  Hendricks seeks benefits that Hendricks alleges he already earned, not future, unearned benefits.  As such, the prohibition against an at-will employee seeking future benefits does not extinguish Hendricks' claim for breach of an oral contract. Accordingly, as to the breach of oral contract count, the Court denies Smartvideo's motion for summary judgment.

## 2. Promissory Estoppel

Smartvideo cites several cases for the proposition that, under Georgia law, a promissory estoppel claim, alleged in the context of at-will employment, is unsustainable.  Hendricks distinguishes the

cited cases.  Hendricks argues that, unlike the cited precedent, Hendricks is not suing for future benefits.  Rather, Hendricks is suing for benefits incurred prior to his termination.  The Court finds that this distinction controls the disposition of Smartvideo's motion for summary judgment on Hendrick's promissory estoppel claim.

In <u>Rental Equip. Group, LLC v. MACI, LLC</u>, the court provided that:

> The essential elements of promissory estoppel are: (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

587 S.E.2d 364, 367 (Ga. Ct. App. 2003).  In the cases cited by Smartvideo, the courts, in dismissing the promissory estoppel claims, appear to rely on the party's failure to establish reasonable reliance.  <u>Murtagh v. Emory Univ.</u>, 152 F. Supp. 2d 1356, 1367 (N.D. Ga. 2001)("[As plaintiff would have been an at-will employee][defendant] could have terminated plaintiff as soon as he was appointed to the position of Chief of Pulmonary, [accordingly,] plaintiff's <u>reliance</u> on such a promise was unreasonable and insufficient to support a claim for promissory estoppel.")(emphasis added)).  The courts reasoned that, since the employment was at-will, it could be terminated at any point.  As such, the courts

found that it was unreasonable for employees to rely on future benefits.   However, in this case, Hendricks seeks benefits that vested before his termination, not future benefits.   Accordingly, unlike the cases that Smartvideo cites, Hendricks' reliance was not per se unreasonable.   Moreover, the issue of reasonable reliance is typically an issue for the jury to resolve.   Snyder v. Time Warner, Inc., 179 F. Supp. 2d 1374, 1384 (N.D. Ga. 2001)(quoting Ambrose v. Sheppard, 528 S.E.2d 282, 284 (Ga. Ct. App. 2000))("Questions of reasonable reliance are usually for the jury to resolve.") Accordingly, as to the promissory estoppel claim, the Court denies Smartvideo's motion for summary judgement.

**3. Fraud in the Inducement**

To establish a claim for fraud under Georgia law, Smartvideo must show: "(1) a false representation by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff."   Id. (citing Cramp v. Georgia-Pacific Corp., 596 S.E.2d 212, 214 (Ga. Ct. App. 2004)).

Hendricks contends that Smartvideo fraudulently induced Hendricks to accept employment with Smartvideo.   Namely, Hendricks claims that, prior to the commencement of Hendricks' employment, Smartvideo fraudulently represented that Smartvideo would give Hendricks 500,000 vested stock options as a signing bonus.

Hendricks alleges that Smartvideo made that representation knowing that it would not provide the stock options.

Smartvideo moves for summary judgment on this count. Smartvideo argues that, since the alleged inducement was associated with an at-will contract, the fraudulent inducement claim is unsustainable.  Smartvideo cites <u>Tart</u> for this proposition.  In <u>Tart</u>, the court provided:

> Although fraud generally cannot be based on statements regarding future events, "there is an exception to this proposition, which is that fraud may be predicated on a promise made with a present intention not to perform." However, Georgia courts consistently have refused to apply this exception in the at-will employment context. Promises regarding future events are "unenforceable even absent any fraud at the time of their utterance . . . because the underlying employment contract, being terminable at will, is unenforceable."

374 F. Supp. 2d 1172, 1183.  The <u>Tart</u> court's reasoning is applicable to this case.  At the time of the utterance of the allegedly false representation, the employment agreement was an unenforceable, at-will agreement.  Smartvideo could have terminated the agreement at any time, including before Hendricks commenced employment.  As such, because Smartvideo could have decided not to employ, and consequently not pay, Hendricks the alleged signing bonus (stock options), Hendricks' fraudulent inducement claim is not actionable.  Accordingly, as to Hendricks' fraudulent inducement claim, the Court grants Smartvideo's motion for summary judgement.

**C. Cross-Motions for Summary Judgment on Smartvideo's counterclaim for Fraudulent Inducement**

Smartvideo filed a counterclaim for fraudulent inducement and has now moved for summary judgment on it.  Smartvideo argues that Hendricks committed resume fraud.  Specifically, Smartvideo contends that it is undisputed that Hendricks fraudulently represented that he received a degree from the University of Florida.  Hendricks, who does not hold a degree from the University of Florida, denies allegations that he made such a representation.  (Doc. #52 at 2.)  Thus, a genuine issue of material fact exists.  Accordingly, as to Smartvideo's counterclaim, the Court denies Smartvideo's motion for summary judgment.

Hendricks filed a cross-motion for summary judgment also on Smartvideo's counterclaim.[2]  Hendricks makes two arguments.  First, Hendricks argues that Smartvideo did not exercise due care in investigating Hendricks' alleged representation that Hendricks' held a degree from the University of Florida.  As such, Hendricks argues

---

[2] Smartvideo identifies that Hendricks' motion was filed after the deadline to file dispositive motions.  As such, Smartvideo argues that the Court should not consider the motion.  Smartvideo's counterclaim was not filed until after the passing of the dispositive motion deadline.  As such, it was impossible for Hendricks to file his motion before the dispositive motion deadline.  Nevertheless, Hendricks' counsel should have filed a motion for permission to file out of time because, indeed, the deadline for filing dispositive motions had expired.  While ordinarily the Court would have been inclined to have granted Smartvideo's request, given the circumstances of this case, the Court will consider the motion for summary judgment.

that Smartvideo's reliance on this alleged representation was unreasonable. Consequently, Hendricks argues that Smartvideo does not meet the reliance element of a claim for fraudulent inducement. Accordingly, Hendricks contends that Smartvideo's claim is not actionable.

An employer's reliance on an employee's representations is reasonable if the employer is "justified in relying [on the employee's representations] in the exercise of common prudence and diligence." Todd v. Martinez Paint & Body, Inc., 517 S.E.2d 844, 846 (Ga. Ct. App. 1999). Smartvideo, in its response, argues that it exercised common prudence and diligence. "'Questions of reliance on an alleged fraudulent misrepresentation . . . must be determined as a question of fact for the jury.'" GE Life & Annuity Assur. Co. v. Barbour, 191 F. Supp. 2d 1375, 1385 (N.D. Ga. 2002)(citing Crews v. Cisco Bros. Ford-Mercury, Inc., 411 S.E.2d 518, 520 (Ga. Ct. App. 1991)). Thus, the Court finds that Smartvideo's reliance on Hendricks' alleged misrepresentation is a question for the jury. Accordingly, Hendricks' reliance argument fails.

Hendricks second argument is also unsuccessful. Hendricks argues that Smartvideo has failed to provide any evidence that Smartvideo suffered any damages due to the alleged fraud. In response, Smartvideo asserts, inter alia, that Smartvideo provided Hendricks with a salary, benefits, housing, a laptop computer, and a cell phone. Smartvideo argues that, absent the alleged

-18-

misrepresentation, Smartvideo would not have employed Hendricks and provided him with the aforementioned benefits.  On this, Smartvideo argues that it has been damaged to the extent it provided Hendricks with those benefits.

In the summary judgment context, the Court must draw all reasonable inferences in the non-moving party's favor.  Doing so, the Court finds that Smartvideo raises a sufficient factual dispute to overcome summary judgment.  Accordingly, the Court denies Hendricks' motion for summary judgment.

## D.  Motion for Sanctions

Smartvideo moves to dismiss this action, alleging abusive discovery practice.  Specifically, Smartvideo alleges that Hendricks intentionally destroyed the hard drive on his laptop computer. Hendricks denies that he intentionally destroyed the hard drive. Indeed, Hendricks contends that the evidence is so lacking that Smartvideo's motion constitutes a frivolous motion.  Hendricks argues that the motion was filed merely to harass Hendricks and increase his litigation costs.  On this contention, in a cross-motion, Hendricks requests that the Court impose sanctions on Smartvideo pursuant to Federal Rule of Civil Procedure 11(b).  For the reasons stated below, the Court denies both motions.

On January 26, 2006, Hendricks filed the complaint in this case.  (Doc. #58 at 3.)  Hendricks represents that the hard drive

on his laptop computer crashed soon thereafter.  Hendricks further represents that he took the laptop to CompUSA to be repaired on or about April 25, 2006.  (Doc. #65 at 8.)  Hendricks contends that CompUSA installed a new hard drive.  Hendricks picked up the laptop and paid for the services on April 30, 2006.  (Id.)  A duplicate receipt confirms this.  (Id. at 9.)  When CompUSA asked whether he desired to keep his old hard drive, Hendricks declined.  (Doc. #58-7 at 3.)

On April 28, 2006, Smartvideo served Hendricks, by mail, with the First Request for Production.  (Doc. #65 at 2.)  Smartvideo requested, inter alia:

> All electronic mail (e-mail) and word processing documents created, received or maintained by you on a personal computer, laptop, or work computer which refer or relate to: your employment with Defendant, your job performance while employed with Defendant, conversations or communications regarding your job performance while employed with Defendant, Defendant's termination of your employment, and/or your interactions or communications with other company employees.

(Id. at 13.)  Hendricks did not receive the request until May 1, 2006.  (Id. at 2.)  As such, the request was received after Hendricks had the hard drive installed and, presumably, after Hendricks declined the old hard drive.

As noted, Smartvideo requests that the Court sanction Hendricks for failure to produce his old hard drive.  Smartvideo characterizes Hendricks' nonacceptance of the old hard drive from CompUSA as an

intentional destruction of the hard drive.  Smartvideo argues that this destruction has prejudiced Smartvideo's defense and ability to pursue its counterclaim.

As to its defense, Smartvideo cites the 2005 Stock Incentive Plan, which provides that "'if the Board determines after the termination of the [employee's] service that the [employee] has engaged in conduct constituting Cause (whether before or after the termination of the [employee's] service), the [employee's] Options shall terminate immediately to the extent not exercised in accordance with the terms of this Agreement.'" (Doc. #58 at 13.) Cause includes, inter alia, "'[Dishonestly, theft, fraud . . . ." (Id.)  As to its counterclaim, Smartvideo claims prejudice because Smartvideo cannot examine Hendricks' old hard drive for evidence that Hendricks represented to Smartvideo or other entities that Hendricks held a college degree.

Hendricks argues that the destruction of the hard drive was not intentional.  Hendricks further argues that he had the hard drive replaced before he received the first request for production. Moreover, Hendricks argues that these events occurred well in advance of Smartvideo's assertion of the counterclaim and affirmative defense of fraudulent inducement.   Taken together, Hendricks argues that these facts establish that there was no bad faith destruction of the hard drive.

The Court has both Federal Rule of Civil Procedure 37 and inherent power to dismiss a case for discovery abuses.  Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126 (S.D. Fla. 1987)(citing  Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980); Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 951 (9th Cir. 1976); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Calif. 1984)).   Under either approach, the Court has broad discretion.   However, the Court's inherent power is broader than its Rule 37 power.  Id. (citing Van Bronkhorst v. Safeco Corp., 529 F.2d at 951).

Dismissal is an extreme sanction.  To dismiss a case under Rule 37, the Court must find bad faith.  Banco Latino, S.A.C.A. v. Gomez Lopez, 53 F. Supp. 2d 1273, n.3 (S.D. Fla. 1999)("Eleventh Circuit precedent . . . clearly imposes a requirement of bad faith for the imposition of sanctions in connection with the destruction of evidence.").

On the record currently before the Court, the Court cannot find that Hendricks destroyed his old hard drive in bad faith.  As noted, Hendricks contends that his hard drive crashed, he had it replaced and refused the old hard drive.  Smartvideo's forensic analyst confirmed the likely credibility of Hendricks' contention. Specifically, the analyst provided:

> c.   Evidence does not directly support the computer "crashed" or experienced any technical issues that would require the replacement of the hard drive.

-22-

The replacement of the hard drive and installation of the Operating System on May 1st 2006 are circumstantial indicators that the computer "crashed", but does not establish a computer "crash" as the basis for why the hard drive was replaced. The hard drive could have been replaced for various reasons.

d.   Plaintiff emailed Rick Reeder and referred to his "HDD" (Hard Disk Drive) being "last some time ago". An assumption was made that the word "last" in the text is misspelled and was intended to read "lost some time ago". <u>While not confirming Plaintiff's hard drive was replaced, it does corroborate Plaintiff's claims regarding this matter</u>.

(Doc. #65 at 21)(emphasis added).   Moreover, Hendricks did not receive Smartvideo's first request for production until after he picked up his laptop, as evidenced by the date on the receipt. Taking these facts together, the Court cannot find bad faith.   As such, the Court will not dismiss the case under Rule 37.   Equally, the Court, in its discretion, will not exercise its inherent power to dismiss the case.[3]

The Court also denies Hendricks' cross-motion for sanctions. As noted, Hendricks argues that the motion was filed merely to harass.   Admittedly, the Court has denied Smartvideo's motion for sanctions.   However, the Court does not find that Smartvideo's motion was unreasonable. <u>Jones v. International Riding Helmets</u>, 49 F.3d 692 (11th Cir. 1995)(quoting <u>Souran v. Travelers Ins. Co.</u>, 982

---

[3]   Smartvideo requests the attorney's fees and costs incurred in drafting the motion for sanctions.   The Court denies that request.

F.2d 1497, 1506 (11th Cir. 1993)("Rule 11 sanctions are proper . . . 'when the party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law . . . .'")  As such, the Court denies Hendricks' cross motion for sanctions.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

1. Smartvideo's Motion for Summary Judgment (Doc. #44) is **GRANTED** in part and **DENIED** in part.

2. Hendricks' Cross-motion for Summary Judgment (Doc. #53) is **DENIED**.

3. Smartvideo's Motion for Sanctions (Doc. #58) is **DENIED**.

4. Hendricks' Cross Motion for Sanctions (Doc. #67) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 26th day of January, 2007.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record